# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

Real et al                                         Civil Action No. 17-01288

versus                                            Unassigned District Judge

Matteo                                          Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Currently pending before the undersigned, on referral by the district judge, is a Motion To Dismiss For Lack of Jurisdiction filed by Defendant, Devescovi Matteo, [Rec. Doc. 5], Plaintiffs, Michael Real and Fancy Hat Studios, Inc's, Memorandum in Opposition [Rec. Doc. 8-1], and Matteo's Reply thereto [Rec. Doc. 16].[1] For the reasons set forth below, the undersigned recommends that the Motion To Dismiss be granted.

## I. Background

This dispute concerns alleged copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* and the Digital Millennium Copyright Act ("DMCA"). Plaintiffs, Michael Real ("Real") and Fancy Hats Studio ("FHS") allege that Devescovi Matteo

---

[1]Plaintiffs also filed a Motion To Strike Matteo's Motion to Dismiss which is set on the Court's January 17, 2018 Motion day. [Rec. Doc. 8]. As the Motion has been fully briefed, Matteo's Opposition was filed on December 6, 2018, [Rec. Doc. 17], and the Court finds that oral argument is not necessary, the Court will consider the Motion To Strike below.

("Matteo") infringed their copyright of the "Towergirls property."[2] *R. 1, p.1*. Real is an individual domiciled in Australia, and FHS is a Louisiana corporation. *Id at p.1*. Matteo is an individual living and doing business as a games developer in Italy. *R. 5-1, p.1*.

On February 21, 2017, Matteo entered into a Memorandum of Understanding with Real wherein Real would be "Lead Artist on the Towergirls Kingdom Team for the purpose of asset generation and approved design usage for the project Towergirls: Kingdom Conquest" ("the Project"). *R. 1-2; Exh. P-1*.[3] Matteo used the online crowd-funding site, Patreon, as the primary source of funding for the Project. *R. 5-1, p.1*. Patreon is a San Francisco-based online crowd-funding site that allows small technology operations to get funding from non-traditional sources. *Id at p.5*.

Plaintiffs allege that in late September, 2017, they became aware that Matteo had added "certain morally reprehensible additions to the game [violent nonconsensual sex)" without informing Plaintiffs. They allege that such content

---

[2] In an affidavit filed with Plaintiffs' Opposition, John A. Tate, the owner of FHS, states that FHS became a 30% copyright owner of the Towergirl properties on June 29, 2016. *R. 11, p.2*.

[3] The terms of the MOU stated that it was to be replaced by a formal binding contract to be signed by February 22, 2017; however, no such contract was ever executed. *Id at p.4*. Plaintiffs contend that as a result, no assignment of licensing of any of the copyrighted property was ever made. *Id*. Plaintiffs further contend that they agreed to continue work on the project provided that they retained sole ownership of the Towergirls copyrighted name and property. *Id*.

"insulted fans of the property in a personal and unprofessional manner." They further allege that "most critically" Matteo was making public statements undermining Plaintiffs' ownership of Towergirls.

Thereafter, on September 25, 2017, Plaintiffs sent a "take-down-notice" to Patreon as to all of the "infringed property." *Id at pp.5-6, Exh. P-2.* Plaintiffs allege that Matteo sent a counter-notice to Patreon on September 27, which was received by Plaintiffs on September 28, 2017. *Id at p.6.* In the counter-notice, Matteo contended that Towergirl properties was "fair use."[4] *Id.*

As the alleged copyright owner of Towergirls property, Plaintiffs pray that their "copyrighted property" (including, "Towergirls" name and the designs and names of all characters) as well as everything associated with "Towergirls Kingdom: Conquest game" be taken down from "The Towergirls Kingdom Team Patreon page." *Id., p.3.* Plaintiffs pray for injunctive relief, compensation[5] and attorneys fees and court costs.

On October 25, 2017, Matteo filed the instant motion to dismiss. *R. 5.* Plaintiffs filed an opposition to the Motion, *R. 11*, as well as a Motion To Strike portions of

---

[4] "Fair use" is an affirmative defense which serves to excuse a use that otherwise is infringing. Fair use requires an equitable balancing of multiple factors, including four factors set out in the text of 17 U.S.C. § 107 (2000). *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004).

[5] Plaintiffs allege that Matteo used Towergirl properties for profit in the amount of $13,519.60, thereby infringing on and devaluing Plaintiffs' property.

3

Matteo's motion to dismiss. *R. 8*.

## II. The Parties' Contentions

Matteo asserts that he was emailed a copy of this lawsuit from Patreon, but has never been served by Plaintiffs. Matteo also asserts that this Court lacks personal jurisdiction, either general or specific, over him. As to specific jurisdiction, he contends that Plaintiffs' claims do not "arise out of or result from his forum-related contacts" because the allegations are directed at the alleged breaches of the contract entered into and performed in foreign countries, with no connection whatsoever to this forum. As to general jurisdiction, Matteo asserts that he lacks "continuous and systematic general business contacts" with Louisiana. Matteo further contends that Real's assignment of 30% of the "Towergirls property" to FHS does not confer jurisdiction upon this Court because FHS is not a party to the contract between Real and Matteo.

Plaintiffs argue that Matteo voluntarily consented to personal jurisdiction by availing himself of the counter-notice procedure under the terms of the DMCA. Plaintiffs also contend there is personal jurisdiction over Matteo in this Court because FHS, a Louisiana corporation, is a copyright interest owner. Therefore, as a necessary or indispensable party to this action, jurisdiction is conferred in Louisiana. Lastly, Plaintiffs imply that Patreon's in-house counsel's indifference to venue conveys

jurisdiction in Louisiana.

## III. Law and Analysis

### A. *Motion to Dismiss based on Insufficient Service of Process*

#### *1. Legal Standard*

"The general rule is that when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant. *Gregory v. United States Bankruptcy Court*, 942 F.2d 1498, 1500 (10th Cir.1991; *see also* 5A Wright & Miller, § 1354, at 289–90 (explaining that where the propriety of service is unclear, "the simplest solution ... is to quash process and allow plaintiff another opportunity to serve defendant"). At the same time, dismissal without opportunity to cure is appropriate where proper service would be futile. *See id.*; 5A Charles A. Wright & Arthur R. Miller, § 1354, at 289. Proper service would be futile, for instance, where this Court would not have personal jurisdiction over the defendant." *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F.Supp.2d 746, 750 (W.D.La.,2000).

#### *2. Service of process on Matteo*

Matteo contends he was never served with the Complaint in this case. Fed. Rule Civ. P. 12(b)(5) provides for dismissal of a claim if service was not timely made in accordance with Fed. Rule Civ. P. Rule 4 or was not properly served in the

appropriate manner. As a resident of Italy, Matteo asserts that service outside of the United States must be done in accordance with Rule 4(f) of the Federal Rules of Civil Procedure. Rule 4(f)(1) provides that an individual "may be served at a place not within any judicial district of the United States ... by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). The Hague Convention affirmatively authorizes service of process through the Central Authority of a receiving state. Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a Central Authority. However, Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements. *Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir.2004). Because it is undisputed that Plaintiffs did not use either the Central Authority under the Hague Convention or any other internationally agreed means for accomplishing service, Matteo maintains that Rule 4(f)(1) did not provide a proper basis for service. Foreign defendants are permitted to "insist on service pursuant to the Hague Convention." *Sheets v. Yamaha*, 891 F.2d 533, 536 (5th Cir.1990).

Plaintiffs do not address service under the Hague Convention. Instead, they move to strike those portions of Matteo's motion that interpose an objection as to the

timeliness of Plaintiffs' service of process upon Matteo.[6] *R. 8.* Plaintiffs contend that Rule 4(m) bars a dismissal motion until 90 days after the complaint is filed. As the motion to dismiss was filed 17 days after the Complaint was filed, Plaintiffs contend that Matteo's motion is premature. Plaintiffs further contend that Rule 4(m) "does not apply to service in a foreign country." Plaintiffs assert that because this Court has personal jurisdiction over Matteo they have other means of valid service rather than Rule 4(f)(1). Matteo does not oppose the motion to strike, but rather states there is no personal jurisdiction over him in this Court.

Based on the parties' contentions, the Court will forgo any ruling on whether service of process was made on Matteo and consider his motion as to whether there is personal jurisdiction over him.[7] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (Where the court must address multiple grounds for dismissal, the court should consider "concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction.").

---

[6] Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

[7] As it is not necessary to address the Motion To Strike, the Court will deny it as moot.

## B. *Motion to Dismiss based on Lack of Personal Jurisdiction*

### *1. Legal Standard*

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Command–Aire v. Ontario Mechanical Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir.1992).

Personal jurisdiction can be either general or specific. The court may exercise general jurisdiction when the defendant has "continuous and systematic general business contacts" with the forum state, but the contacts are not necessarily related to the lawsuit. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,414–15 (1984). In the Fifth Circuit, specific jurisdiction inquiry entails a three-step analysis: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether

the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir.2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

> **2.  *Plaintiffs cannot establish general or specific personal jurisdiction over Matteo.***

Here, the record, including Matteo's affidavit, *R. 5-2,* establishes that Matteo does not have "continuous and systematic general business contacts" with the State of Louisiana. In his affidavit, Matteo states that he has not visited, been taxed, registered to do business, nor offered anything for sale in the State of Louisiana. *R. 5-2*. Plaintiffs do not dispute Matteo's affidavit nor do they contend that Matteo had any contact with Louisiana.[8] The Court cannot exercise general jurisdiction over Matteo based on continuous and systematic contacts.

As to specific jurisdiction, the contract at issue was entered into and performed in Australia and Italy with no connection whatsoever to Plaintiffs' chosen forum—Louisiana. Additionally, Plaintiffs' allegation that Matteo has a connection to Louisiana because FHS is a 30% copyright interest owner of Towergirls is of no consequence because the contract at issue in this lawsuit is only between Matteo and

---

[8] In fact, Plaintiffs assert that Matteo is not subject to jurisdiction in any state. *See, infra,* Plaintiffs' argument under F.R.C.P. 4(k)(2).

Real, individually. This action does not arise out of or result from Matteo's forum-related contacts. Specific jurisdiction does not exist in this action.

### 3. Plaintiffs cannot establish personal jurisdiction under F.R.C.P. 4(k)(2)

Plaintiffs contend that because Matteo is a citizen of Italy and is therefore not subject to any state jurisdiction or service through a state long-arm statute, this Court has personal jurisdiction over Matteo via federal long arm jurisdiction under Rule 4(k)(2). The Court disagrees finding that Plaintiffs' reasoning misconstrues Rule 4(k)(2) and disregards the jurisprudence applying it.

Rule 4(k)(2) serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States as a whole, but not with the forum state, satisfy due process. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (2009). "Federal Rule of Civil Procedure 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state. . . . The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment." *Patterson v. Aker Solutions Incorporated*, 826 F.3d 231, 234 (5th Cir.

2016).

Plaintiffs' claim arises under federal law (DMCA) and Matteo asserts it is not subject to jurisdiction in any other state, thus, the dispute is whether Matteo has sufficient contacts with the United States to satisfy due process. The due process clause requires that a court exercise personal jurisdiction with [the United States] over a nonresident defendant only if the defendant has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).

The record contains no evidence that Matteo had any contracts with the United States, except for his use of Patreon, the San Francisco based web platform. The alleged breach of the contract at issue is between Real and Matteo, and was entered into and performed in foreign countries—Australia and Italy—with no connection to the United States. *R. 5-2.* Matteo's website is operated from his home in San GiulianoTerme, Italy. *Id.* As Plaintiffs have failed to show that Matteo has sufficient contacts with the United States or Louisiana, the Court concludes that the exercise of personal jurisdiction over him would not be consistent with the Constitution or traditional notions of fair play to allow a lawsuit in Louisiana to go forward over a dispute between parties with no contacts with this forum or the United States. Thus,

the Court finds that Rule 4(k)(2) does not apply to provide Plaintiffs with personal jurisdiction over Matteo.

### *4. Plaintiffs cannot establish personal jurisdiction under The DMCA*

Plaintiffs alternatively allege that this Court has personal jurisdiction over Matteo under the DMCA "because he is a nonresident alien" who filed a "counter-notice under 17 U.S.C. 512(g)(3), and thereby subjected himself by contract, and by operation of law, to federal personal jurisdiction." *R. 1, p. 2; R. 11, pp.3, 6; Exh. P-3.* Plaintiffs argue that the "counter notice" sent by Matteo to Patreon subjects him to personal jurisdiction in Louisiana pursuant to 17 U.S.C. 512(g)(3) of the DMCA.

Congress passed the DMCA in 1998 to create an environment that facilitated electronic commerce, digital technology, and expression while protecting intellectual property rights. *Automattic Inc. v. Steiner*, 82 F.Supp.3d 1011, 1017 (N.D.Cal., 2015). Section 512 of the DMCA expressly limits the liability of an internet service provider ("ISP")[9], in this case Patreon, for copyright infringement by its subscribers. In adopting section 512, Congress intended to craft a mechanism that would "balance the need for rapid response to potential infringement with the end-users [the alleged infringers] legitimate interests in not having material removed without recourse." S. Rep. No. 105-190, at 21 (1998). Subsection 512(c) provides a detailed procedure

---

[9] A "service provider" means a provider of online services or network access, or the operator of facilities therefor. 17 U.S.C. § 512(k).

through which a copyright owner may request that the ISP remove infringing content from its web-publishing platform. § 512(c). If a copyright owner believes in good faith that content is infringing, the owner may send a "takedown notice" to the ISP pursuant to subsection 512(c)(3), and the ISP then must remove or disable access to the material "expeditiously" or face infringement liability itself. §§ 512(c)(1)(C), (c)(3). Section 512(g) provides that the alleged infringer [the "subscriber"] must include in the counter notification:

> The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of [the] Federal District Court for the judicial district in which the address [of the subscriber] is located, *or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found*, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.

§ 512(g)(3)(D) (emphasis supplied).

Based on the foregoing provision, the DMCA provides, and Matteo does not dispute, that upon submitting the "Counter-Notification," Matteo as the "subscriber," consented to personal jurisdiction in the judicial district <u>where the service provider is located</u>. There is no dispute that the ISP, Patreon, is a California corporation with its only office in San Francisco. Indeed, Plaintiffs' Complaint states that "'Patreon,' is a San Francisco based website." *R. 1, p.3*.

In their Opposition Memorandum, Plaintiffs refer to emails between Real and

13

Patreon's general counsel, Colin Sullivan, in which Real asked Sullivan whether "it would be possible to file suit in the 9th Federal Circuit, or if it is necessary to be with the Federal Circuits in San Francisco, as my lawyer is located in Louisiana." *R. 11-5*. In response, Sullivan stated, "For the purposes of removing the page we are indifferent to the forum, so any federal court will do." *Id.* Plaintiffs' suggestion that there is personal jurisdiction in Louisiana against Matteo based on Patreon's consent is without merit. The email does not establish such an interpretation, but more importantly, the statute clearly mandates that, as the "subscriber," Matteo consented to the judicial district where Patreon is located—San Francisco, California.

Accordingly, personal jurisdiction over Matteo in Louisiana would violate due process because jurisdiction would not be "reasonable and just according to our traditional conception of fair play and substantial justice." *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945). Section 512(g) of the DMCA fails to confer personal jurisdiction over Matteo in this Court.

## IV. Conclusion

For the reasons explained above, this Court recommends that the Motion To Dismiss For Lack of Jurisdiction filed by Defendant, Devescovi Matteo, [Rec. Doc. 5] be GRANTED and this action be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b),

parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 3rd day of January, 2017, at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**